IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DENNIS BROWN, | : | CIVIL ACTION |
|---|---|---|
| Plaintiff, | : | |
| v. | : | |
| | : | NO. 19-2110 |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

Dennis Brown ("Brown" or "Plaintiff") seeks review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of Social Security's ("Commissioner") decision denying his claim for Disability Insurance Benefits ("DIB").[1] For the reasons that follow, Brown's Request for Review will be DENIED.

## I.   PROCEDURAL HISTORY AND BACKGROUND

Brown was born on December 8, 1981. R. at 20.[2] He has a limited education and is able to communicate in English. Id. He has previous work experience as a cabinet maker and a carpenter. Id. at 19. On June 30, 2016, Brown protectively filed an application for DIB pursuant to Title II of the Social Security Act. Id. at 13. He alleged that he had become disabled on January 1, 2013 due to social anxiety, depression, acid reflux (GERD), and insomnia. Id. at 89. His application was initially denied on September 8, 2016. Id. at 13. Brown then filed a written

---

[1] In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment. See Doc. Nos. 3, 6.

[2] Citations to the administrative record will be indicated by "R." followed by the page number.

request for a hearing on November 2, 2016.  Id.  On October 18, 2017, Brown amended his alleged onset date to April 1, 2015.  Id. at 180.  A hearing before an Administrative Law Judge ("ALJ") was held on February 7, 2018.  Id.  On July 25, 2018, the ALJ issued an opinion finding that Brown was not disabled.  Id. at 10-25.  Brown filed a timely appeal with the Appeals Council on August 22, 2018.  Id. at 161-64.  On April 16, 2019, the Appeals Council denied Brown's request for review, thereby affirming the decision of the ALJ as the final decision of the Commissioner.  Id. at 1-6.  Brown then commenced this action in federal court.

## II.   THE ALJ'S DECISION

In his decision, the ALJ found that Brown suffered from the following severe impairments: depression and anxiety.  Id. at 15.  The ALJ did not find that any impairment, or combination of impairments, met or medically equaled a listed impairment and determined that Brown retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to the performance of routine repetitive tasks, cannot tolerate interaction with the public, and can perform self-paced work with no production[-]line duties.

Id. at 16-17.  Based on this RFC determination, and relying on the vocational expert ("VE") who appeared at the hearing, the ALJ found that there were jobs that existed in significant numbers in the national economy that Brown could perform, such as a "Cleaner Housekeeper."  Id. at 20-21.  Accordingly, the ALJ concluded that Brown was not disabled.  Id. at 21.

## III.  BROWN'S REQUEST FOR REVIEW

In his Request for Review, Brown contends that: (1) substantial evidence does not support the ALJ's mental RFC assessment; and (2) the ALJ erred in evaluating Brown's symptoms.

## IV.     DISCUSSION

### A.     Social Security Law

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period. 42 U.S.C. § 423(d)(1). As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

The role of the court in reviewing an administrative decision denying benefits in a Social Security matter under 42 U.S.C. § 405(g) is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001); see also Richardson v. Perales, 402 U.S. 389, 401 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is a deferential standard of review. See Jones v. Barnhart, 364

F.3d 501, 503 (3d Cir. 2004). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (Substantial evidence "'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988))). A reviewing court may not undertake a de novo review of the Commissioner's decision in order to reweigh the evidence. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986). The court's review is plenary as to the ALJ's application of legal standards. Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

### B. The ALJ's Mental RFC Was Supported by Substantial Evidence

Brown contends that the ALJ's mental capacity RFC assessment was not supported by substantial evidence because there were no RFC assessments in the record from any physician. Pl.'s Br. (Doc. No. 11) at 3-5. This contention lacks merit.

As an initial matter, contrary to Brown's claim, the record contained RFC assessments from the State agency psychologist, Soraya Amanullah, Ph.D., as well as Brown's primary-care physician, Chris Lupold, M.D. Specifically, Dr. Amanullah opined that Brown's restriction of activities of daily living and difficulties in maintaining concentration, persistence or pace were "mild," and that his difficulties in maintaining social functioning were "moderate." R. at 91. Dr. Amanullah determined that Brown did not have any limitations in understanding, memory, sustained concentration or persistence. Id. at 93. She found that he was moderately limited in his ability to interact appropriately with the general public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; but not significantly limited in his ability to ask simple questions or request assistance, to accept instructions and respond

4

appropriately to criticism from supervisors; or to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Id. at 93-94. Dr. Amanullah opined that Brown did not have any adaptation limitations. Id. at 94. Ultimately, Dr. Amanullah concluded that Brown was able to perform routine, repetitive work activities and would perform best in an environment with minimal requirements for social interaction. Id. The ALJ afforded this RFC assessment "significant weight," explaining:

> Dr. Amanullah's assessments of the claimant's mental functioning were supported by a detailed discussion of the evidence of record available as of the date of that determination, and new treatment and examination records received as of the hearing level do not clearly reflect any consistent deterioration of the claimant's symptoms or functioning. The undersigned has found a somewhat greater degree of limitation with regard to the claimant's concentration and persistence abilities in deference to his subjective allegations (to the extent these allegations are not inconsistent with his demonstrated performance on clinical examination).

Id. at 18-19.

The record also contained the opinion of Brown's primary-care physician, Dr. Lupold. Id. at 377-82. In a Physical Residual Functional Capacity Questionnaire completed on July 27, 2016, Dr. Lupold opined that Brown was diagnosed with anxiety, depression, and irritable bowel syndrome, but that his prognosis was "fair." Id. at 378. His symptoms included "panic attacks." Id. Dr. Lupold found that, during a typical workday, Brown would "constantly" experience pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks, and that he was "[i]ncapable of even 'low stress' jobs." Id. at 379. Dr. Lupold also included a number of physical limitations in his RFC assessment. He indicated that Brown would likely be absent from work more than four days per month. Id. at 381. He provided no explanation supporting these limitations, nor did he identify whether these limitations were a result of Brown's physical or mental impairments. Thus, the ALJ gave Dr. Lupold's opinion only "little weight," reasoning that the "assessments [were] not supported by

5

the treatment notes of this medical source or by the claimant's longitudinal treatment history and demonstrated functioning during the period at issue." Id. at 19. Notably, Brown does not challenge the weight the ALJ afforded these opinions.

Instead, Brown argues that the ALJ had the duty to develop the record by ordering a psychological-consultative examination. Pl.'s Br. at 3-4. The decision to order a consultative examination is within the sound discretion of the ALJ. Thompson v. Halter, 45 F. App'x 146, 149 (3d Cir. 2002); see also 20 C.F.R. § 404.1517. The regulations authorize an ALJ to obtain a consultative examination if the medical sources in the record "cannot or will not give [the ALJ] sufficient medical evidence about [the claimant's] impairment for [the ALJ] to determine whether [the claimant] is disabled." 20 C.F.R. § 404.1517. Accordingly, an "ALJ's duty to develop the record does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." Thompson, 45 F. App'x at 149. However, the claimant bears the burden to develop the record regarding his or her disability. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Rutherford, 399 at 551. Moreover, when a claimant is represented by counsel, an ALJ is entitled to assume that an applicant is making his or her strongest case for benefits. See, e.g., Yoder v. Colvin, No. 13-107, 2014 WL 2770045, at *3 (W.D. Pa. June 18, 2014).

Here, the ALJ carefully considered the medical record, in addition to the medical opinions discussed above, in formulating Brown's RFC. The ALJ reviewed a psychiatric-evaluation report dated January 14, 2015 that discussed Brown's anxiety and depression. R. at 389-90. The report described Brown's history with social anxiety, panic attacks, and depression, but also stated that Brown was "motivated to pursue employment." Id. at 390. Upon examination, it was noted that he was dressed casually and appropriately and was fully

6

cooperative and agreeable. Id. Brown's speech was normal in rate, tone, and volume, and he was in no apparent distress. Id. Brown described himself as feeling "anxious," but his affect was "perhaps slightly restricted but does expand appropriately." Id. There were no gross-cognitive deficits or signs of dissociation, and his insight appeared "fairly good, as d[id] his judgment." Id. The psychiatrist adjusted Brown's medication regimen and recommended that he continue individual therapy. Id.

As the ALJ recognized, see id. at 17-18, while Brown experienced social anxiety and depression, his clinical findings remained relatively normal. For example, during a medication-management visit with his mental-health provider on January 27, 2015, Brown appeared alert and cooperative, his mood was good or fair, his affect was congruent and broad, his attention and concentration were intact, his thought form was logical, and his insight and judgment were good. Id. at 454-55; see also id. at 450-51 (February 26, 2015 visit); 446-47 (March 30, 2015 visit); 443-44 (April 14, 2015 visit); 440-41 (May 19, 2015 visit); 437-38 (June 16, 2015 visit); 434 (July 14, 2015 visit). At this visit, although he reported that "anxiety occurs in public and in general as usual," he indicated he was "[n]ot especially depressed." Id. at 454. As noted by the ALJ, there was some worsening of his anxiety reported in a visit in August 2015, but his mental-status examination remained relatively normal, with appropriate language; logical and goal-directed thought process; no loose or unusual associations; no abnormal or psychotic thoughts; good judgment and insight; oriented, intact recent and remote memory; fair attention; good concentration; and a fair fund of knowledge. Id. at 431; see also id. at 427. Brown also began weaning off of certain medications and, in January 2016, he advised of no new issues and reported "feel[ing] meds have helped." Id. at 411; see also id. at 407. In March and April 2016, Brown stated that "he has been doing well currently" and that, although he had some anxiety, his

7

medications were working.  Id. at 403.  In April 2016, he advised of "no depression."  Id. at 399.  By June 2016, Brown reported that "he [was] feeling better," "eating ok and sleep[ing] ok," "no side effects," and "no new issues."  Id. at 395.  Similarly, during a primary-care visit in July 2016, it was noted that he had "[n]o sign of depression."  Id. at 538.  In January 2017, Brown reported that "things [were] going well on current combo."  Id. at 555.  Brown continued to have normal mental-status examinations in subsequent office visits.  Id. at 551-52 (April 6, 2017 visit); 547-48 (June 7, 2017 visit); 543-44 (September 6, 2017 visit).  During Brown's September 6, 2017 visit, it was noted that his medications "[were] still working well for him," "[s]till takes [medication] at times of high level of anxiety with good results," "[d]epression is well controlled," and "[h]e denie[d] any side effects."  Id. at 543.

Based on his evaluation of this evidence, as well as the medical opinions in the record, the ALJ's RFC assessment was supported by substantial evidence.  Moreover, neither Brown nor his representative ever asked for a consultative examination or opinion during the administrative process, including in the pre-hearing brief submitted by Brown's counsel, see id. at 256, at the hearing, id. at 28-63, or in his request for review to the Appeals Council, id. at 266.  The ALJ was presented with sufficient information to make a decision and acted properly within the scope of his discretion by not ordering a consultative examination.  See Thompson, 45 F. App'x at 149; see also Reid v. Astrue, No. 06-2694, 2008 WL 2165100, at *4 (E.D. Pa. May 23, 2008).

Brown also argues that the ALJ failed to explain how an individual with moderate limitations in concentration, persistence or pace "could sustain work involving end of day production goals," relying on Novak v. Berryhill, No. 15 CV 50236, 2017 WL 1163733, at *7 (N.D. Ill. Mar. 29, 2017), an out-of-Circuit district court case.  Pl.'s Br. at 4.  Not only is Novak not binding on this Court, but the circumstances are distinguishable.  In Novak, the ALJ

8

concluded that a claimant could not perform fast-paced work or work with strict production goals, but he could meet end-of-day requirements. 2017 WL 1163733, at *4. The court determined that the reference to the claimant's capacity to meet end-of-day requirements was "not supported by any medical opinion," and that the ALJ erred in mischaracterizing a medical opinion as supporting the RFC as articulated by the ALJ. Id. at *7-8. Here, the ALJ did not include a limitation in Brown's RFC that he could sustain work involving end-of-day production goals, nor did he mischaracterize any medical opinions or the medical evidence of record in formulating Brown's RFC. The RFC assessment limited Brown to the performance of routine, repetitive tasks, with no interaction with the public, and self-paced work with no production-line duties. R. at 16-17.[3] When presented with a hypothetical involving this RFC, the VE testified at the administrative hearing that "cleaner/housekeeper" and "bakery worker conveyor line" would be available jobs. Id. at 57. When questioned by the ALJ about whether those jobs would conflict with the "self-paced" and "no production line" aspects of the RFC, the VE testified that the "cleaner/housekeeper" position would satisfy that criteria, indicating that "[t]hey're very tolerant at most cleaning jobs." Id. at 58. The VE also testified that her testimony was consistent with the Dictionary of Occupational Titles. Id. Brown's counsel did not object to either the VE's qualifications or to her testimony in this respect. Id. at 55, 58. Therefore, the ALJ did not err in relying on the VE's testimony. See Rutherford, 399 F.3d at 555; see also Knight v. Colvin, No. 16-1816, 2018 WL 1400077, at *1 n.1 (W.D. Pa. Mar. 20, 2018) ("The VE offered expert testimony as to how the position . . . is actually and ordinarily performed, and the ALJ was entitled to rely on this evidence in conducting his . . . analysis.").

---

[3] Indeed, this RFC was even more restrictive than the opinion of the State agency expert, who opined that Brown was capable of performing routine, repetitive work with minimal requirements for social interaction. R. at 94.

## C. The ALJ Did Not Err in Evaluating Brown's Alleged Symptoms

Brown maintains that the ALJ's conclusion that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record," R. at 17, "impli[e]d that the ALJ used a clear and convincing evidence standard" as opposed to a "preponderance of the evidence standard," Pl.'s Br. at 5. This contention is meritless. As part of an RFC analysis, an ALJ must determine the intensity, persistence, and limiting effects of an individual's symptoms. 20 C.F.R. § 404.1529(c). In making this assessment, the ALJ must examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record. SSR 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017). Additionally, the ALJ will consider daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c). The ALJ will also examine inconsistencies between the claimant's statements and the evidence presented. Id.

The burden is on the claimant to satisfy the factfinder that the subjective pain is real and of disabling severity. Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971); Lyons v.

Heckler, 638 F. Supp. 706, 710 (E.D. Pa. 1986). "Although any statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d Cir. 2011) (internal citation and quotation marks omitted). A finding that a claimant's testimony regarding his or her symptoms is inconsistent with the medical evidence is a legitimate basis for an ALJ to discount the claimant's testimony. Joyce v. Shalala, No. 94-1901(JCL), 1997 WL 998582, at *7 (D.N.J. Oct. 17, 1997) ("[T]he Secretary may evaluate the credibility of the plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true extent of such symptomology."); see also Showell v. Colvin, No. CV 14-7081, 2016 WL 3599569, at *5 (E.D. Pa. July 1, 2016); Perry v. Barnhart, No. 02-1289, 2003 WL 22423199, at *8 (E.D. Pa. Sept. 26, 2003); Riggsbee v. Shalala, No. 93-5768, 1995 WL 847944, at *8 (D.N.J. June 29, 1995), aff'd sub nom. Riggsbee v. Chater, 82 F.3d 406 (3d Cir. 1996); Druckenmiller v. Sullivan, No. 88-6300, 1990 WL 87383, at *4 (E.D. Pa. June 18, 1990). "Given [his or] her opportunity to observe an individual's demeanor, the ALJ's . . . determinations are entitled to great deference and may not be discarded lightly." Cowley v. Comm'r of Soc. Sec., No. CV 16-4800 (JBS), 2017 WL 4548265, at *9 (D.N.J. Oct. 12, 2017) (citing Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003)).

    Here, the ALJ satisfied his duty in evaluating Brown's symptoms, and his conclusion that his allegations and testimony were not fully consistent with the medical record is supported by substantial evidence. Brown testified that he was depressed, had anxiety and would experience panic attacks when around other people. R. at 32-36. As discussed supra in Section IV(B), however, Brown's medical records indicated that, although he experienced anxiety, his mental-status examinations were consistently normal, his depression had subsided, and his symptoms

11

were well managed with his medication. Moreover, the ALJ noted that Brown continued with a range of daily activities, including self-care, housework, errands, reading, computer use, and leisure activities. R. at 18. Thus, the ALJ's determination that Brown's allegations of disabling limitations were not fully consistent with the medical and other evidence of record was amply supported.

Next, Brown argues that the ALJ improperly "faulted Brown on the ground that his treatment was routine and conservative in nature," without explaining what "routine and conservative" meant. Pl.'s Br. at 6. The ALJ, however, did not "fault[]" Brown for his treatment, but rather, in evaluating the medical evidence, determined that "the record shows that the claimant's symptoms were effectively mitigated with conservative medication." R. at 18. As discussed supra in Section IV(B), Brown's medical records demonstrated that his medications were working well to control his depression and anxiety. See, e.g., R. at 543, 555. In fact, Brown informed his medical providers that "[h]e still ha[d] the ultimate goal of coming completely off of klonopin and [was] sl[ow]ly going down over the past few months." Id. at 543. The ALJ did not err in categorizing his medication regimen, from which he was trying to slowly reduce, as conservative in nature and taking that into consideration when evaluating Brown's symptoms. See, e.g., Aurand v. Berryhill, No. 3:17-CV00959, 2018 WL 2276250, at *11 (M.D. Pa. Apr. 23, 2018) (agreeing with the ALJ's description that claimant received "routine and conservative outpatient mental[-]health treatment" when she had not required or been referred for any inpatient hospitalization, partial hospitalization, or other form of more intensive mental-health intervention), report and recommendation adopted, No. 3:17-CV-959, 2018 WL 2254726 (M.D. Pa. May 17, 2018); McClease v. Astrue, No. 11CV0373, 2013 WL 5377778, at *12 (E.D. Pa. Sept. 26, 2013) (finding the ALJ's characterization of the claimant's

"routine and conservative nature of her mental[-]health treatment," among other evidence, provided substantial evidence for the ALJ's determination that claimant was not disabled where claimant did not need or receive emergency treatment, inpatient psychiatric treatment, or intensive outpatient treatment).[4]

Finally, Brown argues that the ALJ erred in failing to acknowledge the side effects resulting from Brown's medications. Pl.'s Br. at 7. Brown alleges that his medications "made him tired and sleepy," id., relying on the "Function Report–Adult" that Brown completed, wherein he wrote "sleep" next to his medication for Mirtazapine. R. at 222. However, toward the end of the relevant period, Brown denied any side effects resulting from his current medications. See, e.g., id. at 543, 547. At the administrative hearing, Brown maintained that his medications "[s]ometimes" caused drowsiness or sleepiness, id. at 30, but that he was experiencing such side effects only once per week, id. at 50. Consequently, based on the evidence in the medical record, the ALJ did not err by failing to consider the potential side effects of Brown's medications. See, e.g., Schmidt v. Comm'r of Soc. Sec., 465 F. App'x 193, 199 (3d Cir. 2012) (a "failure to consider side effects is not error where the only probative evidence is the claimant's own conclusory statements"). Moreover, the ALJ thoroughly considered the totality of Brown's medical records, reported symptoms, and daily activities in determining his RFC, and that RFC was supported by substantial evidence in the record.

---

[4] Brown also contends that the ALJ improperly relied on the fact that his symptoms "were effectively mitigated with medication," and that "having an improved condition does not mean that the claimant is not disabled." Pl.'s Br. at 6. The fact that Brown's anxiety and depression were well controlled by his medication in no way undermines the ALJ's conclusion that he was not disabled. The ALJ's finding that Brown's mental-health disorders did not prevent him from performing the work outlined in his RFC was based on a thorough evaluation of the entirety of the medical record, which did not support Brown's allegations of serious impairment.

13

## V. CONCLUSION

For the reasons set forth above, I find that the ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's Request for Review will be denied and dismissed. An appropriate Order follows.

Dated: March 16, 2020

BY THE COURT:

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE